# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

WILLIAM S. DIBLE,

       Plaintiff,

vs.

STEVE SCHOLL and GARY O.
MAYNARD

       Defendants.

No. C05-4089-MWB

**MEMORANDUM ORDER AND
OPINION REGARDING THE
DEFENDANTS' MOTION TO
DISMISS**

---

## TABLE OF CONTENTS

*I.* *INTRODUCTION AND FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . 3

*II.* *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   *A.* *Rule 12(b)(6) Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   *B.* *Arguments of the Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      *1.* *The defendants' arguments for dismissal* . . . . . . . . . . . . . . 7
      *2.* *Dible's argument in resistance to the defendants' motion to
         dismiss* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *C.* *Applicable Precedent And Relevant Case Law* . . . . . . . . . . . . . . 9
      *1.* **Preiser v. Rodriguez** . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      *2.* **Heck v. Humphrey** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      *3.* **Edwards v. Balisok** . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
      *4.* **Spencer v. Kemna** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
      *5.* *Lower court applications of the favorable termination
         requirement after* Spencer . . . . . . . . . . . . . . . . . . . . . . . 22
         *a.* *Section 1983 claim not allowed* . . . . . . . . . . . . . . . 23
         *b.* *Section 1983 claim allowed* . . . . . . . . . . . . . . . . . 26
      *6.* *This court's determination* . . . . . . . . . . . . . . . . . . . . . . 29
   *D.* *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*III.  CONCLUSION*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

In order to ensure the protection of an individual right, more than mere enumeration of that right is required.  Without also a means of redress, an individual right becomes illusory due to the inability to enforce that right.   This controversy brings before the court an issue of first impression within the Eighth Circuit—namely whether the unavailability of a remedy under 28 U.S.C. § 2254, the federal habeas corpus statute, permits a former state prisoner to maintain an action under 42 U.S.C. § 1983,[1] even though success in such an action would necessarily imply the invalidity of a conviction or sentence.  Specifically, in this case, the court confronts the question of whether a former state prisoner—who is precluded from pursuing a habeas claim—can maintain an action for damages as a result of alleged due process violations that occurred during a prison disciplinary proceeding under § 1983 or whether his rights are nothing more than a mirage—appearing to exist at first glance, but transforming into an illusion upon careful inspection due to the lack of a federal forum in which to enforce them.[2]   The defendants, taking the latter position, have filed a motion to dismiss the plaintiff's § 1983 action for failure to state a claim upon which any relief may be granted,

----

[1]Section 1983 of Title 42 of the United States Code provides a federal remedy for the violation of federally protected rights when the violation occurs under the guise of state law.

[2]A mirage, often seen in the desert or on hot asphalt,  is defined as "[a]n optical phenomenon that creates the illusion of water and results from distortion of light by alternate layers of hot and cool air." *The American Heritage College Dictionary* 870 (3d ed. 1997).

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiff has resisted the defendants' motion, asserting he is entitled to pursue protection of his civil rights in a federal forum.

## I. INTRODUCTION AND FACTUAL BACKGROUND

On July 22, 2003, while incarcerated at the Sioux City Residential Treatment Facility, William S. Dible ("Dible" or "Plaintiff") received notice that he had allegedly violated prison disciplinary rules. The disciplinary report issued by the prison disciplinary committee alleged Dible had assaulted and threatened a citizen of the State of Iowa. This report was based exclusively on confidential information. Therefore, the report excluded the victim's name and failed to identify the date or location in which the alleged assault transpired. Following a hearing, the prison disciplinary committee found Dible guilty of assaulting and threatening a citizen of the State of Iowa, in contravention of prison disciplinary rules. Subsequently, Dible's work release was revoked and he was assessed 60 days loss of good time credits. The loss of good time credits effectively operated to lengthen Dible's twenty-five year prison sentence by thirty days.

On July 13, 2005, Dible filed a complaint with this court alleging two due process violations pursuant to 42 U.S.C. § 1983 (Doc. No. 2).[3] Specifically, the complaint avers that the disciplinary notice Dible received failed to comport with procedural due process, as guaranteed by the Fourteenth Amendment of the United States Constitution, because it was "too vague." Dible contends the ambiguous nature of the report precluded him from preparing and presenting a meaningful defense during his prison disciplinary hearing.

---

[3]Dible first exhausted his prison administrative remedies, thereby complying with that requirement of the Prison Litigation Reform Act of 1996, 42 U.S.C. § 1997e(a).

Notably, Dible's complaint does not seek restoration of the revoked good time credits; rather, Dible seeks relief solely in the form of monetary damages and legal costs. Shortly after filing his complaint, Dible discharged his sentence and was released from prison on August 31, 2005. On October 27, 2005, the defendants filed a Motion To Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which any relief may be granted (Doc. No. 7). The plaintiff filed a Resistance To Defendants' Motion To Dismiss on November 7, 2005 (Doc. No. 8). Neither party requested oral argument on the motion to dismiss. Therefore, the court deems the defendants' motion to dismiss as fully submitted on the parties' written submissions. Accordingly, this matter is ready for a determination by this court.

## II. LEGAL ANALYSIS

### A. Rule 12(b)(6) Standards

The issue on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his, her, or its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party are true, and must liberally construe those allegations. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir. 1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir.

1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999) ("When analyzing a 12(b)(6) dismissal, we accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff."); *Midwestern Mach., Inc. v. Northwest Airlines, Inc.*, 167 F.3d 439, 441 (8th Cir. 1999) ("When ruling on a motion to dismiss, courts are required to accept the complaint's factual allegations as true and to construe them in the light most favorable to the plaintiff."); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 405 (8th Cir. 1999) ("In reviewing a motion to dismiss for failure to state a claim, we view the facts in the light most favorable to the claimant, taking the facts as found in the complaint as true) (citing *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir. 1998)); *Doe v. Norwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997) ("In considering a motion to dismiss, we assume all facts alleged in the complaint are true, construe the complaint liberally in the light most favorable to the plaintiff, and affirm the dismissal only if 'it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief.'") (quoting *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994)); *WMX Techs., Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1198 (8th Cir. 1997) ("In considering a motion to dismiss, the court must construe the complaint liberally and assume all factual allegations to be true.").

The court is mindful that, in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (citing *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)); *see Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (stating that the court "do[es]

not, however, blindly accept the legal conclusions drawn by the pleader from the facts") (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 595-97 (1969)); *accord. LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir. 1995) (indicating the court "'need not accept as true legal conclusions or unwarranted factual inferences'") (quoting *Morgan*, 829 F.2d at 12).  Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the plaintiffs' complaint, accepted as true, are sufficient to state a claim upon which relief can be granted.  *Silver*, 105 F.3d at 397; *Westcott*, 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)); *accord Conley,* 355 U.S. at 45-46 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer*, 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations'") (quoting *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)); *Gordon*, 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

that would demonstrate an entitlement to relief."); *Midwestern Mach., Inc.*, 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998) (same); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997) (same); *Doe*, 107 F.3d at 1304 (same); *WMX Techs., Inc.*, 105 F.3d at 1198 (same). Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey*, 44 F.3d at 671 (internal quotation marks and ellipses omitted); *see Parnes*, 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim). Keeping these standards in mind, the court turns to consideration of the merits of the parties' respective arguments with respect to the defendants' Motion To Dismiss.

### B.  Arguments of the Parties

#### 1.  The defendants' arguments for dismissal

In their motion to dismiss, the defendants contend the plaintiff has failed to state a claim upon which relief may be granted and that dismissal is mandated by Rule 12(b)(6) of the Federal Rules of Civil Procedure. The defendants acknowledge that the basis of Dible's § 1983 action stems from a prison disciplinary matter, in which Dible allegedly received a constitutionally inadequate disciplinary notice. However, the defendants contend Dible's complaint wholly fails to allege, nor could he demonstrate, that the prison disciplinary determination at issue has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. Pursuant to the United States Supreme Court's opinion in *Heck v.*

*Humphrey*, 512 U.S. 477 (1994), the defendants contend that the lack of such an allegation or demonstration is fatal to the plaintiff's § 1983 claim because a determination in Dible's favor would necessarily imply the invalidity of his conviction. Accordingly, in order to state a cognizable claim under § 1983, the defendants aver the plaintiff must first procure a favorable determination on a claim for habeas relief and allege as such in his complaint. Although the defendants note that Dible can no longer file a claim for habeas relief because he is no longer "in custody" within the meaning of § 2254, the defendants contend this does not alter the bright-line rule established by *Heck* and its progeny. Consequently, the defendants assert Dible has failed to state a claim upon which relief may be granted and that dismissal is warranted. The defendants also request Dible be assessed costs in this action.

**2.       *Dible's argument in resistance to the defendants' motion to dismiss***

In his argument in resistance, Dible points out that the defendants' motion to dismiss is predicated upon the rule enunciated by the Supreme Court in *Heck*. Although acknowledging the existence of the "favorable determination rule," as the lower courts have so termed the rule explicated in *Heck*, the plaintiff contends it is not applicable to the facts of his § 1983 claim. In his brief, Dible launches a two-pronged attack in resistance to the defendants' motion to dismiss. First, Dible contends his § 1983 claim falls outside the reach of *Heck* because he is neither requesting the restoration of the revoked good time credits, nor is he challenging the validity of his disciplinary report. Rather, Dible asserts he is merely challenging the "procedurals" utilized during his disciplinary hearing. Stated differently, Dible contends *Heck* is inapplicable to his § 1983 action because he is only seeking damages for employment of unconstitutional procedures and this, he contends, does not imply the invalidity of his conviction, taking his claim outside the realm of *Heck*.

Alternatively, Dible contends that this court can maintain his § 1983 action in light of *Spencer v. Kemna*, 523 U.S. 1 (1998), a case decided by the United States Supreme Court subsequent to *Heck*. According to the plaintiff, *Spencer* carved out an exception to the *Heck* favorable-determination requirement. Essentially, Dible avers *Spencer* stands for the proposition that where federal habeas corpus relief is unavailable as a remedy to address constitutional wrongs, a § 1983 action can be maintained. Otherwise, if the favorable-determination rule set forth in *Heck* continues to control even after a plaintiff's habeas claim becomes moot, the plaintiff argues he will be essentially denied a forum in which to enforce his rights. Accordingly, the plaintiff contends this court should deny the defendants' Motion To Dismiss in its entirety.

## C. Applicable Precedent And Relevant Case Law

The heart of this controversy resides at the intersection of "the two most fertile sources of federal-court prisoner litigation—the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983, and the federal habeas corpus statute, 28 U.S.C § 2254." *Heck*, 512 U.S. at 480. Both § 1983 and § 2254 are intended to provide a federal forum for redressing grievances with respect to unconstitutional treatment that is meted out by state officials. *Id.* However, the two statutes differ, not only in their scope, but also in their operation. *Id.* For example, a claimant need not exhaust state remedies as a prerequisite to filing a claim under § 1983.[4] *See Patsy v.*

---

[4]While this general statement is true, as noted previously, the Prison Litigation Reform Act of 1996 mandates that prisoners exhaust "such administrative remedies as are available" before bringing an action concerning "prison conditions." 42 U.S.C. § 1997(e)(a); *see Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (stating that the exhaustion requirement is applicable "irrespective of the forms of relief sought and offered

(continued...)

*Bd. of Regents*, 457 U.S. 496, 500-01 (1982) (noting the Court has, on numerous occasions, "rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies") (citing *Barry v. Barchi*, 443 U.S. 55, 63 n.10 (1979); *Gibson v. Berryhill*, 411 U.S. 564 (1973); *Carter v. Stanton*, 405 U.S. 669, 671 (1972); *Wilwording v. Swenson*, 404 U.S. 249, 251 (1971); *Houghton v. Shafer*, 392 U.S. 639, 640 (1968); *King v. Smith*, 392 U.S. 309, 312 n.4 (1968) *Damico v. California*, 389 U.S. 416 (1967)); *see also Steffel v. Thompson*, 415 U.S. 452, 472-73 (1974) ("When federal claims are premised on [§ 1983] . . . we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights."); *Monroe v. Pape*, 365 U.S. 167, 183 (1961) (stating the federal remedy under § 1983 is supplementary to any state remedy and therefore, the latter need not be sought prior to invocation of the federal remedy).  Contrarily, a prisoner seeking relief under the federal habeas corpus statute, must demonstrate that redress has first been sought in a state forum.  28 U.S.C. § 2254(b); *see Rose v. Lundy*, 455 U.S. 509, 515 (1982) (discussing the history and scope of the exhaustion requirement codified in § 2254).  Despite the poignant differences in the statutes, given the nature of the remedies they provide for, the potential for overlap is great.  It is this overlap that is at issue in the matter before this court.  Accordingly, a review of the relevant case law is not only warranted, but also necessary, because the proper resolution of this hybrid case turns upon a clear understanding of the precise contours of the law.

---

[4](...continued)
through administrative avenues"); *see also Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (upholding district court's grant of summary judgment due to failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1996).

*1.* **Preiser v. Rodriguez**

The United States Supreme Court first addressed the interrelationship between § 1983 and the federal habeas corpus statute in *Preiser v. Rodriguez*, 411 U.S. 475 (1973). In *Preiser*, three state prisoners challenged the revocation of their good time credits for disciplinary reasons.[5] *Id.* at 477-82. The prisoners alleged that their credits had been revoked in an unconstitutional manner and specifically sought an injunction reinstating their revoked good time credits. *Id.* at 487. Instead of proceeding under the habeas corpus statute, the three prisoners filed an action under § 1983, namely because they desired to forego exhausting their state remedies as is required under the habeas statute. *Id.* at 488. Thus, the issue addressed by the Court in *Preiser* was which statute controlled—the general verbiage enunciated in § 1983 or the more specific language promulgated in § 2254. *Id.* at 482, 489-90. The *Preiser* Court determined that the specific statute, § 2254, took precedence over the more general parameters set forth in § 1983. *Id.* at 490; *see id.* at 500 ("Upon that question, we hold today that when a state prisoner is challenging the very fact or duration of his physical imprisonment . . . his sole federal remedy is a writ of habeas corpus."). The dissent implied that the majority opinion may have been influenced, in part, by the Court's refusal to allow state prisoners to evade the exhaustion requirements of the habeas statute. *See id.* at 503-04 (Brennan, J., dissenting) ("At bottom, the Court's holding today rests on an understandable apprehension that the no-exhaustion rule of § 1983 might, in the absence of some limitation, devour the exhaustion rule of the habeas corpus statute."). However, this concern was not reflected in the majority opinion.

---

[5]The revocation of good time credits effectively operates to lengthen a prisoner's term of incarceration.

Rather, the majority opinion focused almost exclusively on federal-state comity considerations. *Id.* at 490-94. Comity, at least in the majority's view, extended beyond federal restraint from interfering with state courts and further encompassed federal restraint from interference with state administrative bodies. *Id.* at 491-92. The court emphasized the import of the state's interest in prison administration: "It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Id.* The majority opinion concluded that "[t]he strong considerations of comity that require giving a state court system that has convicted a defendant the first opportunity to correct its own errors thus also require giving the States the first opportunity to correct the errors made in the internal administration of their prisons." *Id.* at 492 (footnote omitted). Accordingly, the *Preiser* Court held that prisoners should not be allowed to circumvent state remedies as mandated by the habeas statute by opting to file suit under the broad language of § 1983. *Id.* at 500. However, the *Preiser* decision left open the question of whether a suit for damages, as opposed to restoration of good time credits, could be brought under § 1983. *See id.* ("[W]e need not in this case explore the appropriate limits of habeas corpus as an alternative remedy to a proper action under § 1983. That question is not before us."); *see also id.* at 494 ("[T]he respondents here sought no damages, but only equitable relief-restoration of their good-time credits —and our holding today is limited to that situation."). The Court appeared to suggest that in some instances, a suit under § 1983 could be maintained by a prisoner seeking damages: "If a state prisoner is seeking damages, he is attacking something other than immediate or more speedy release—the traditional purpose of habeas corpus." *Id.* at 494. Additionally, the court noted that a damages claim could not be had under the habeas corpus statute and recognized that "a damages

action by a state prisoner could be brought under [§ 1983] without any requirement of prior exhaustion of state remedies." *Id.* In sum, although the Court in *Preiser* suggested, in dicta, that a state prisoner might be able to challenge a conviction by bringing a suit for damages under § 1983, the Court did not definitively decide the issue and the Court did not directly confront the issue again until 1994 in *Heck v. Humphrey*.

### *2.* **Heck v. Humphrey**

In *Heck*, the Court revisited the overlap between § 1983 and § 2254. 512 U.S. at 480. Roy Heck was convicted of manslaughter in an Indiana state court. *Id.* at 478. Heck filed an appeal within the state judicial system. *Id.* While his state appeal was pending, Heck also filed a § 1983 action, alleging three state actors violated his rights by destroying exculpatory evidence. *Id.* at 478-79. Heck only requested monetary damages in his federal claim; he did not seek an injunction ordering his release. *Id.* at 479. Presumably, Heck's claim was predicated on the suggestion in *Preiser* that a prisoner could bring a suit for damages under § 1983, without first exhausting state remedies. *See Preiser*, 411 U.S. at 494 ("[A] damages action by a state prisoner could be brought under [§ 1983] in federal court without any requirement of prior exhaustion of state remedies."); *see also Heck*, 512 U.S. at 481. The Supreme Court granted certiorari in order to clarify the "unreliable, if not unintelligible" dicta enunciated in *Preiser*. *See Heck*, 512 U.S. at 482.

The Court ultimately determined that a state prisoner's claims were not cognizable under § 1983 when the resolution of such a claim would call into question the validity of an outstanding criminal conviction or sentence. *Id.* at 486-87. The full Court joined Justice Scalia's opinion pronouncing that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by

> actions whose unlawfulness would render a conviction or
> sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal,
> expunged by executive order, declared invalid by a state
> tribunal authorized to make such determination or called into
> question by a federal court's issuance of a writ of habeas
> corpus, 28 U.S.C. § 2254. A claim for damages bearing that
> relationship to a conviction or sentence that has not been so
> invalidated is not cognizable under § 1983. Thus, when a state
> prisoner seeks damages in a § 1983 suit, the district court must
> consider whether the judgment in favor of the plaintiff would
> necessarily imply the invalidity of his conviction or sentence;
> if it would, the complaint must be dismissed unless the plaintiff
> can demonstrate that the conviction or sentence has already
> been invalidated. But if the district court determines that the
> plaintiff's action, even if successful, will *not* demonstrate the
> invalidity of any outstanding criminal judgment against the
> plaintiff, the action should be allowed to proceed, in the
> absence of some other bar to the suit.

*Id*. However, although all nine Justices agreed with the pronouncement of a "favorable-termination" prerequisite to filing a § 1983 action that might challenge an outstanding conviction or sentence, the Justices split with respect to not only the rationale underlying the Court's conclusion, but also the reach of such a requirement. Justice Scalia, joined by four other Justices, based his analysis on a comparison of the common law principles behind the tort of malicious prosecution[6] *Id*. at 484-86. Under the common law, as part

---

[6]Justice Scalia determined that a § 1983 suit that challenges an underlying conviction or sentence most resembled the common law tort of malicious prosecution. *Heck*, 512 U.S. at 484. Specifically, he posited:

> The common-law cause of action for malicious
> prosecution provides the closest analogy to claims of the type
> considered here, because unlike the related cause of action for

(continued...)

of a prima facie case of malicious prosecution, a plaintiff was required to allege and prove that the termination of the prior criminal proceeding had been resolved in favor of the accused as part of their prima facie case. *Id.* at 484. The favorable termination requirement developed in the common law tort because it prevented criminal defendants from collaterally attacking their sentences. *Id.* at 484-85. Justice Scalia stated:

> This requirement "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction."

*Id.* at 484 (quoting 8 S. Speiser, C. Karuse, and A. Gans, *American Law of Torts*, § 28:5, p. 24 (1991)). Accordingly, Justice Scalia concluded that the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." *Id.* at 486.

---

[6](...continued)
> false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process. "If there is a false arrest claim, damages for that claim cover the time of detention up until the issuance of process or arraignment, but not more. But a successful malicious prosecution plaintiff may recover, in addition to general damages, compensation for any arrest of imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of the society.

*Id.* (internal quotations and citations omitted).

Justice Souter wrote a concurring opinion, in which he was joined by three other Justices. *Id.* at 491-503 (Souter, J., concurring). Although Justice Souter concurred in the application of the favorable termination rule to § 1983 actions under the circumstances addressed in *Heck*, he disputed the reasoning behind and the perceived breadth of the Court's conclusion. *See id.* at 492; 499-500 (Souter, J., concurring). Justice Souter did not object to the majority's reference to the common law and the tort of malicious prosecution, however, he felt the common law should operate as merely a starting point for the inquiry under § 1983. *Id.* at 492 (Souter, J., concurring). Justice Souter questioned the majority opinion's strict reliance on common-law principles and opined that the same result could have been reached by simply applying the principles set forth in *Preiser* to § 1983 claims for damages. *Id.* at 493-97 (Souter, J., concurring). Justice Souter noted that an award of damages against state officials for unlawful confinement would, "practically, compel the State to release the prisoner." *Id.* at 497 (Souter, J., concurring). Thus, Justice Souter agreed that, regardless of the type of relief sought, allowing a state prisoner to challenge his conviction or sentence under § 1983, "'would wholly frustrate explicit congressional intent' as declared in the habeas exhaustion requirement." *Id.* at 497-98 (Souter, J., concurring) (quoting *Preiser*, 411 U.S. at 489). Thus, as in *Preiser*, Justice Souter posited that "the statutory scheme must be read as precluding such attacks." *Id.* at 498 (Souter, J., concurring).

However, Justice Souter sought to limit the holding in *Heck* to individuals who have access to federal habeas review of their state convictions.[7] *Id.* at 499-503 (Souter, J.,

---

[7]Justice Souter, noted, importantly, that the majority opinion could plausibly be read as saying "nothing more than that now, after enactment of the habeas statute and because of it, prison inmates seeking § 1983 damages in federal court for unconstitutional conviction or confinement must satisfy a . . . favorable termination requirement." *Heck*,

(continued...)

concurring). He determined it would be an entirely different matter "to shut off federal courts altogether to claims that fall within the plain language of § 1983." *Id*. at 501 (Souter, J., concurring). He was concerned that the majority's opinion would "needlessly place at risk the rights of those outside the intersection of § 1983 and the habeas statute, individuals not 'in custody' for habeas purposes." *Id*. at 500 (Souter, J., concurring). Justice Souter was concerned that applying *Heck* to individuals without access to a habeas claim would deny those individuals *any* federal forum in which to pursue a claim of deprivation of federal rights. *Id*. (Souter, J., concurring). Reading § 1983 to exclude claims from federal court, according to Justice Souter, would be in contravention to the broad purpose and history of § 1983. *Id*. at 501 (Souter, J., concurring). Thus, with respect to § 1983 challenges to state convictions in the federal courts, Justice Souter drew a stark line between those in custody, who have access to a federal forum via habeas corpus, and those not in custody, who only have access to a federal forum via § 1983. *Id*. at 503 (Souter, J., concurring). In the latter case, at least in Justice Souter's opinion, the habeas corpus statute and § 1983 did not intersect, and therefore, the more general of language of § 1983, which clearly allowed a claim to be brought, controlled. *Id*. at 502-03 (Souter, J., concurring). However, Justice Souter was unable to command a majority of the Court. In a footnote to the opinion of the Court, Justice Scalia disposed of Justice Souter's argument as follows:

> Justice SOUTER also adopts the common-law principle that one cannot use the device of a civil tort action to challenge the validity of an outstanding criminal conviction, but thinks it necessary to abandon that principle in those cases (of which no real-life example comes to mind) involving former prisoners

---

[7](...continued)
512 U.S. at 500 (Souter, J., dissenting).

> who, because they are no longer in custody, cannot bring
> postconviction challenges. We think the principle barring
> collateral attacks—a longstanding and deeply rooted feature of
> both the common law and our own jurisprudence—is not
> rendered inapplicable by the fortuity that a convicted criminal
> is no longer incarcerated.

*Id.* at 490 n.10. In sum, *Heck* does not distinguish between prisoners in custody and those who are not, and indeed, the dicta in Justice Scalia's majority opinion in *Heck* can be construed as implicitly rejecting just such a distinction. *See id.*

### 3. Edwards v. Balisok

*Heck*'s favorable termination requirement was addressed by the Supreme Court again in 1997. *Edwards v. Balisok*, 520 U.S. 641 (1997). There, the Supreme Court applied the *Heck* favorable termination requirement to a state prisoner who was seeking damages for unconstitutional deprivation of good time credits. *Id.* at 648. In *Edwards*, Jerry Balisok, a state prisoner, was charged with and found guilty of four prison infractions. *Id.* at 643. As a result, he lost thirty days' good time credit.[8] *Id.* After his appeal within the prison's appeal system was rejected due to his failure to follow the applicable procedural requirements, Balisok filed a claim under § 1983 based on averments of deceit and bias on the part of the hearing officer. *Id.* Although the violations of due process alleged by Balisok were similar to those asserted by the plaintiff in *Heck*, Balisok's claim differed in one critical aspect—he did not seek damages for the undeserved revocation of his good time credits. *Id.* at 643-44. Instead, Balisok sought only damages for the alleged deprivation of those credits without due process. *Id.* at 645. Thus,

---

[8]Balisok was also sentenced to ten days in isolation and twenty days in segregation. *Edwards*, 520 U.S. at 643. However, the Court, in *Edwards*, focused almost exclusively on the loss of his good time credits, which effectively operated to impact the length of his overall sentence.

Balisok's claim attempted to draw a distinction between challenges premised on the procedures utilized as opposed to the ultimate outcome of the hearing, presumably in an effort to evade application of *Heck*'s favorable termination requirement to his claim. *Id.* In its decision, the *Edwards* Court rejected Balisok's distinction. *Id.* at 645-46. The Court explained that even though Balisok did not seek reinstatement of his good time credits, a favorable ruling on his procedural claims would necessarily vitiate the revocation of Balisok's good time credits. *Id.* at 646. Accordingly, the Court concluded Balisok's claim was not cognizable under § 1983 until, consistent with *Preiser* and *Heck*, the prison's decision had been reversed by an administrative tribunal or by a state or federal court in a habeas proceeding. *Id.* at 646-48.

### 4.    Spencer v. Kemna

*Edwards* did not remain the Supreme Court's final word on the subject for very long. Less than one year later, in *Spencer v. Kemna*, 523 U.S. 1 (1998), the Supreme Court once again addressed the intersection between § 1983 and § 2254, albeit indirectly.[9] In *Spencer*, Randy Spencer filed a habeas corpus petition seeking to invalidate an order revoking his parole. 523 U.S. at 3-5. After Spencer filed his petition, but before the district court ruled upon it, Spencer completed the imprisonment term underlying his parole revocation. *Id.* at 6. The issue subsequently considered by the Supreme Court was whether the expiration of Spencer's sentence mooted his petition. *Id.* at 3, 7. In an opinion authored by Justice Scalia, the Court held that Spencer's habeas petition was properly dismissed as moot because it failed to present a case or controversy as required by Article III, § 2 of the Constitution. *See id.* at 18 (affirming the judgment of the United States Court of Appeals for the Eighth Circuit). In concluding as such, the Court

---

[9]*Spencer* is the Supreme Court's most recent word on this matter.

acknowledged that a prisoner's challenge to the validity of a conviction always meets Article III's case or controversy requirement, but refused to extend this presumption to the termination of Spencer's parole status. *Id.* at 7, 8-14. Moreover, the Court further concluded that the collateral consequences of parole revocation were too speculative and remote to constitute an injury-in-fact, as required by Article III. *Id.* at 14-16.

Turning to *Spencer*'s relevance to the present discussion, Spencer advanced an additional argument against the mootness of his petition. *Id.* at 17. He contended his petition could not be moot because *Heck* and its progeny required him to show habeas relief as a prerequisite to a § 1983 action. *Id.* In short, Spencer argued he would be unable to satisfy *Heck*'s favorable termination requirement if his petition were declared moot. *Id.* Justice Scalia's opinion for the Court brushed aside this argument as a "great non sequitur, unless one believes (as we do not) that a § 1983 action for damages must always and everywhere be available." *Id.* It is unclear from Justice Scalia's opinion, how sweeping he intended this statement to be. Notably, he did not go so far as to acknowledge that a released prisoner would *never* be able to challenge the validity of an already-served sentence under § 1983 without first pursing habeas relief.

However, even if Justice Scalia's statement can be read to intend preclusion of § 1983 actions even in cases in which a habeas petition would be dismissed as moot, five Justices disagreed with it. *See id.* at 18-21 (Souter, J., concurring). Justice Souter's concurrence expressed the view that *Heck* has no applicability when the plaintiff is not in custody, rendering habeas relief unavailable. *Id.* at 20-21 (Souter, J., concurring). According to Justice Souter, the favorable termination requirement enunciated in *Heck* was simply a "way to avoid collisions at the intersection of habeas and § 1983 . . . ." *Id.* at 20 (Souter, J., concurring). Consequently, Justice Souter asserted federal courts are "bound to recognize the apparent scope of § 1983 when no limitation is required for the

sake of honoring some other statute or weighty policy, as in the instance of habeas." *Id.*

at 20 (Souter, J., concurring); *see also id.* at 21 (Ginsburg, J., concurring) (stating that

"[i]ndividuals without recourse to the habeas statute . . . fit within § 1983's 'broad

reach'"). Specifically, Justice Souter stated:

> [W]e are forced to recognize that any application of [*Heck*'s]
> favorable-termination requirement to § 1983 suits brought by
> plaintiffs not in custody would produce a patent anomaly: a
> given claim for relief from unconstitutional injury would be
> placed beyond the scope of § 1983 if brought by a convict free
> of custody (as, in this case, following service of a full term of
> imprisonment), when exactly the same claim could be
> redressed if brought by a former prisoner who had succeeded
> in cutting his custody short through habeas. The better view,
> then, is that a former prisoner, no longer "in custody", may
> bring a § 1983 action establishing the unconstitutionality of a
> conviction or confinement without being bound to satisfy a
> favorable-termination requirement that it would be impossible
> as a matter of law for him to satisfy. Thus, the answer to [the
> petitioner's] argument that his habeas claim cannot be moot
> because *Heck* bars him from relief under § 1983 is that *Heck*
> has no such effect. After a prisoner's release from custody,
> the habeas statute and its exhaustion requirement have nothing
> to do with his right to any relief.

*Id.* at 20-21 (Souter, J., concurring) (footnote omitted). Justices O'Connor, Ginsburg, and

Breyer joined Justice Souter's opinion. Justice Ginsburg wrote an additional concurrence

explaining her decision to retreat from her original opinion in *Heck*, where she had

previously joined in Justice Scalia's opinion. *Id.* at 21-22 (Ginsburg, J., concurring).

Additionally, Justice Stevens adopted Justice Souter's position in his dissent: "Given the

Court's holding that petitioner does not have a remedy under the habeas statute, it is

perfectly clear, as Justice Souter explains, that [Spencer] may bring an action under 42

U.S.C. § 1983." *Id.* at 25 n.8 (Stevens, J., dissenting). Thus, in *Spencer*, a majority of

the Court adopted Justice Souter's position on allowing § 1983 challenges to state convictions when a remedy under habeas is unavailable. However, Justice Souter did not write the opinion of the Court. Thus, the legal effect of this unorthodox majority is unclear. However, what is clear is that a majority of the sitting Justices, at the time *Spencer* was decided, were of the opinion that when federal habeas corpus is not available as a remedy to constitutional wrongs, § 1983 must be, based in part upon not only the breadth of the statute, but also general fairness principles.

**5.**     ***Lower court applications of the favorable termination requirement after* Spencer**

Following the Court's opinion in *Spencer*, the federal district and appellate courts have been left to carve out the precise contours of the favorable termination requirement with respect to prisoners who can not access a federal forum via § 2254. Generally, these federal courts have split into two camps. First, are those courts that find *Heck* directly controls this issue. Therefore, because *Spencer* did not overrule *Heck*, these courts conclude that a prisoner not in custody within the meaning of the habeas statute or whose habeas action has been mooted upon release from incarceration, remains nonetheless precluded from bringing a claim for damages under § 1983 under the language in *Heck*. Second, are those courts that follow Justice Souter's logic in *Spencer* and find that *Heck* did not affirmatively decide the issue, leaving these courts free to conclude that a prisoner without recourse under the habeas statute may bring an action under the broad scope of § 1983. There is no existing Eighth Circuit precedent on this issue.[10] Accordingly, a

---

[10]In 1999, the Eighth Circuit did decide *Cooper v. Schriro*, 189 F.3d 781 (8th Cir. 1999), a case in which a prisoner brought a § 1983 action asserting, among other allegations, that certain prison disciplinary hearings were constitutionally deficient. There, the Court found that the state prisoner's claim for damages and declaratory relief was barred by *Heck* because the prisoner failed to show that the punishment he received
(continued...)

brief review of the case law of other jurisdictions will be instructive to this court in reaching its determination.

### a.    *Section 1983 claim not allowed*

One of the first post-*Spencer* opinions addressing the applicability of *Heck*'s favorable termination requirement to prisoners who are precluded from pursuing a habeas remedy was *Figueroa v. Rivera*, 147 F.3d 77, 81 n.3 (1st Cir. 1998). The facts of *Figueroa* are somewhat unconventional because the petitioner died while his habeas corpus petition was pending. *Id.* at 79. Accordingly, the district court dismissed the petitioner's pending habeas action on mootness grounds. *Id.* at 79-80. The petitioner's family then attempted to bring a § 1983 suit averring the deceased petitioner had been unconstitutionally convicted and sentenced. *Id.* at 80. The district court dismissed the § 1983 action, concluding *Heck* barred the action. *Id.* On appeal, the First Circuit agreed that *Heck* barred the unconstitutional conviction and imprisonment claims. *Id.* While the First Circuit acknowledged that such a result worked a patent fundamental unfairness, the

---

[10](...continued)
following the hearings was overturned or invalidated in any way. *Cooper*, 189 F.3d at 784-85. Although *Cooper* has been cited favorably by at least one court as impliedly precluding § 1983 claims even in cases where habeas relief is unavailable, *see Rodriguez v. Penobscot County Jail*, No. 00-253-B-S, 2001 WL 376453, at *6 & n.7 (D. Me. Apr. 11, 2001), this court notes that the Eighth Circuit did not even mention *Spencer*, nor discuss its effect on *Heck*'s favorable termination requirement. *See Cooper*, 189 F.3d at 784-85. Further, based on the meager facts contained in the Eighth Circuit's opinion, it is unclear whether the facts of *Cooper* warranted the advancement of such an argument, and if so, whether it was raised to and considered by the court prior to rendering its final decision. For example, it is unclear whether habeas or some other type of relief would have been available to Cooper. It is also unclear, what exactly Cooper was challenging, therefore, it is impossible to discern whether his challenges would "necessarily vitiate" his underlying conviction. Thus, this court does not regard *Cooper* as being dispositive with respect to the issue currently before this court.

court ultimately concluded that permitting such a complaint to proceed would run afoul of *Heck*'s core holding and would contravene the requirement that a § 1983 plaintiff prove all the essential elements of the cause of action. *Id.* at 80-81. In a footnote, the First Circuit acknowledged the Supreme Court's holding in *Spencer* and recognized that that case cast doubt upon the "universality of *Heck*'s 'favorable termination' requirement. *Id.* at 81 n.3. However, the First Circuit ultimately declined to follow the new, unorthodox *Spencer* majority. *Id.* at 81 n.3. Specifically, the First Circuit stated:

> We are mindful that dicta from concurring and dissenting opinions in a recently decided case, *Spencer v. Kemna*, may cast doubt upon the universality of *Heck*'s "favorable termination" requirement. The Court, however, has admonished the lower federal courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions, and to leave to the Court "the prerogative of overruling its own decisions." We obey this admonition.

*Id.* (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)). The Fifth, Sixth, and Third Circuits have followed the First Circuit's logic pronounced in *Figueroa*. *See, e.g.*, *Randell v. Johnson*, 227 F.3d 300, 301-02 (5th Cir. 2000) (relying on the reasoning set forth in *Figueroa*); *Huey v. Stine*, 230 F.3d 226, 229-30 (6th Cir. 2000) (citing *Figueroa*), *overruled on other grounds by Muhammad v. Close*, 540 U.S. 749 (2004); *Gilles v. Davis*, 427 F.3d 197, 209-10 (3d Cir. 2005) (following *Figueroa*).[11] Based on an unpublished

---

[11]These decisions have not been rendered without a great deal of confusion. For example, the Fifth Circuit, in *Randell*, stated that the Ninth Circuit also follows the reasoning set forth in *Figueroa*, and cites *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 n.6 (9th Cir. 1998). *Randell*, 227 F.3d at 301 n.5. However, the Fifth Circuit's reliance on that case is somewhat misguided because *Cabrera*'s conviction was overturned and he was acquitted of the charge on retrial. *Cabrera*, 159 F.3d at 378. Thus, *Cabrera*

(continued...)

24

opinion, it also appears the Fourth Circuit would follow this same reasoning. *See Gibbs v. S.C. Dep't of Prob., Parole, & Pardon Servs.*, No. 97-7741, 1999 WL 9941, at *2 (4th Cir. Jan. 12, 1999) (affirming district court's grant of summary judgment with respect to released prisoner's claims under § 1983 on the grounds the claim was precluded by *Heck*). To summarize, the conclusion reached by these courts is premised upon the belief that *Heck* definitively decided, in the negative, the question of whether a prisoner who is

---

[11](...continued)

is not directly on point, because the plaintiff was able to satisfy the favorable termination requirement pronounced in *Heck*. Further, at issue in *Cabrera* was when the plaintiff's cause of action accrued, not whether a state prisoner, who cannot access a federal forum via § 2254, could bring an action under § 1983 without satisfying *Heck*'s favorable termination requirement. The Fifth Circuit staked its reliance on *Cabrera* based on a footnote in the opinion that stated *Heck* remained good law despite the Court's subsequent opinion in *Spencer*. However, as the subsequent discussion will indicate, most of the jurisdictions that have allowed § 1983 claims to proceed acknowledge *Heck* remains good law, but simply find *Heck* does not directly address the situation of a state prisoner who is unable to bring a habeas claim because the "in custody" requirement cannot be met. Additionally, even if the Ninth Circuit's opinion can be read as supporting the proposition stated by the Fifth Circuit, in a subsequent case, the Ninth Circuit clearly retracted from this position. *See Nonnette v. Small*, 316 F.3d 872, 877 (9th Cir. 2002).

The Sixth Circuit has been equally obscure. For instance, in *Huey*, the Sixth Circuit proclaimed that their practice of applying *Heck*, even where habeas relief is unavailable, "has not wavered in the wake of *Spencer*." *Huey*, 230 F.3d at 230. However, in *Randell*, the Fifth Circuit cited *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 396 n.3 (6th Cir. 1999), a case also published by the Sixth Circuit, for the proposition that the Supreme Court would not apply *Heck*'s favorable termination requirement in cases where habeas relief is unavailable. *See Randell*, 227 F.3d at 301 n.4 (citing *Shamaeizadeh*, 182 F.3d at 396 n.3). Indeed, the Fifth Circuit was more than justified in citing *Shamaeizadeh* for that proposition, because in that case, the Sixth Circuit clearly stated that "[t]he majority of the Court in *Spencer*, however, now clearly excludes from *Heck*'s favorable termination requirement former prisoners no longer in custody." *Shamaeizadeh*, 182 F.3d at 396 n.3. These cases illustrate the difficulty lower courts have had in decrypting the legal import of the various Supreme Court opinions with respect to this issue.

precluded from pursuing habeas relief can file a § 1983 action without first meeting the favorable determination requirement. Based upon this belief, although these courts question the continued viability of *Heck*'s favorable termination requirement when habeas is unavailable, these decisions reflect that ultimately, these courts conclude that they are precluded from following *Spencer*, when to do so would overrule *Heck*, a determination solely within the province of the Supreme Court.

### b.    Section 1983 claim allowed

In contrast, several circuit and district courts have adopted the view articulated by Justice Souter in *Spencer* and have held that a person who is legally precluded from pursuing habeas relief may bring a § 1983 action challenging a conviction without satisfying the favorable termination requirement of *Heck*. *See Nonnette*, 316 F.3d at 875-77 & n.6.; *Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001); *DeWalt v. Carter*, 224 F.3d 607, 616-17 (7th Cir. 2000);[12] *Dolney v. Lahammer*, 70 F. Supp. 2d 1038, 1041, 1042 n. 1 (D.S.D. 1999); *Haddad v. California*, 64 F. Supp. 2d 930, 938 (C.D. Cal.

---

[12]This court notes that *DeWalt* may be distinguishable because it dealt with a prisoner who merely challenged the *conditions* of his confinement, not its fact or duration. 224 F.3d at 617. However, in light of the sweeping language utilized by the Seventh Circuit and that court's underlying reasoning enunciated in its opinion, it is clear to this court that the Seventh Circuit's decision rendered in *DeWalt* would also apply to all cases where habeas is unavailable. *See id.* ("[W]here habeas is not applicable, the requirements of the habeas statute do not supersede the explicit right to proceed under § 1983."). A similar implication was also made in *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999), where the Seventh Circuit held the dictum in *Spencer* "cast sufficient doubt on the applicability of *Heck*" so as to make it unreasonable to relieve the state's waiver of its defense under *Heck*. *Id.*; *see also Nance v. Vieregge*, 147 F.3d 589, 591 (7th Cir. 1998) (noting that "five Justices concluded in *Spencer* . . . that the approach of *Heck* does not govern when other relief is *impossible*, but finding that the defendant did not meet satisfy such a condition).

1999); *Zupan v. Brown*, 5 F. Supp. 2d 792 (N.D. Cal. 1998). This line of case law does not, as alluded to by the First Circuit in *Figueroa*, rely upon the contention that *Spencer* overruled *Heck*'s favorable termination requirement. *See, e.g.*, *Nonnette*, 316 F.3d at 877 n.6 ("We conclude that *Heck* does not control, and reach that understanding of *Heck*'s original meaning with the aid of the discussions in *Spencer*.") (citing *DeWalt*, 224 F.3d at 617 n.5). Rather, these authorities conclude that *Heck* should be read as creating a favorable termination requirement only for those persons who, like Heck, had the remedy of habeas corpus available to them. *See Dolney*, 70 F. Supp. 2d at 1042 n.1 ("Several circuit and district courts have adopted the view, articulated by Justices Souter and Ginsburg in their *Spencer* concurrences, that the rule in *Heck* only applies to § 1983 plaintiffs whose confinement may be collaterally challenged.") (citing *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 396 n.3 (6th Cir. 1999); *Jenkins v. Haubert*, 179 F.3d 19, 26-27 (2d Cir. 1999); *Cabrera*, 159 F.3d at 380 n.6; *Nance*, 147 F.3d at 591; *Haddad*, 64 F. Supp. 2d at 936-37; *Harper v. Blanco,* No. 3:97-CV-2058-AH, 1999 WL 7834, at *2-3 (N.D. Tex., Jan. 5, 1999); *White v. Phillips,* 34 F. Supp. 2d 1038, 1039-42 (W.D. La. 1998); *Johnson v. Freeburn,* 29 F. Supp. 2d 764, 775 (E.D. Mich.1998); and *Zupan,* 5 F. Supp. 2d at 796-97). Essentially, these courts adopt Justice Souter's interpretation of *Heck* as expressed in *Spencer* and conclude that *Heck* merely hints at an answer in dicta and is not controlling in cases where a person is foreclosed from pursuing habeas relief because that issue was not before the Court in *Heck*. *See id.*

For example, in *Nonnette v. Small*, a prisoner brought an action under § 1983 alleging that prison officials had violated his constitutional rights by revoking 360 days of his good time credits and imposing 100 days of administrative segregation in a disciplinary proceeding that arose out of an inmate altercation. 316 F.3d at 874. The district court dismissed Nonnette's claim on the authority of *Heck*, requiring Nonnette to proceed first

in habeas corpus. *Id.* at 874-75. After the district court entered its decision, Nonnette was released from incarceration and paroled. *Id.* at 875. Thus, at the time of his appeal, habeas relief was unavailable to Nonnette because if he were to pursue habeas relief under § 2254, his case would be dismissed as moot because establishing the invalidity of his disciplinary proceeding could have no effect on the sanctions imposed as a result of the disciplinary proceeding as he had already served the time. *Id.* at 875-76. In holding that the unavailability of a habeas remedy because of mootness allowed Nonnette to maintain his § 1983 claim, the Ninth Circuit acknowledged that the language in *Heck* could be construed as suggesting that the prior overturning of an underlying conviction is "invariably a prerequisite for a § 1983 action that implies the conviction's invalidity." *Id.* at 876. Despite the dicta in *Heck*, however, the Ninth Circuit concluded that the language in *Heck* was not entirely clear and that it was not directly on point because *Heck* dealt with a prisoner still in custody for habeas purposes. *Id.* at 876-77. The Ninth Circuit, presumably addressing the First Circuit panel's opinion in *Figueroa*, stated:

> We recognize that, if *Heck*, precluded Nonnette's action, we would not be free to consider it undermined by the opinions in *Spencer*. The Supreme Court retains the sole prerogative of overruling its own decisions. *See, e.g.*, *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989). We conclude that *Heck* does not control, and reach that understanding of *Heck*'s original meaning with the aid of the discussions in *Spencer*. *See DeWalt v. Carter*, 224 F.3d 607, 617 n.5 (7th Cir. 2000) ("[W]e rely on separate opinions not to overrule precedent, but to help guide us in deciding an open question.").

*See id.* at 877 n.5. *Nonnette* exemplifies the reasoning behind this line of cases—namely that *Spencer* merely clarified the logic underlying *Heck*, as opposed to undermining *Heck*'s holding or implying it was no longer good law. *See, e.g.*, *White*, 34 F. Supp. 2d at 1042

n.8 (W.D. La. 1998). Thus, in summation, the courts allowing a § 1983 action have ultimately concluded that *Heck* remains good law with respect to its core holding that prisoners who have a remedy under § 2254 available to them must comply with the favorable termination requirement prior to maintaining an action under § 1983. However, whether an individual who is legally precluded from pursuing relief under § 2254 must meet the favorable termination requirement is considered to be an open question because *Heck* did not directly confront such a situation and merely touched upon the answer in dicta.

**6.     *This court's determination***

Based on the foregoing review of the applicable case law with respect to this issue, in order to arrive at a conclusion, this court must first determine whether *Heck* is deemed to be "directly applicable precedent." If it is, this court must follow that precedent, even if its holding has become tenuous in light of the opinions enunciated in *Spencer*. However, if *Heck* does not control, this court must then determine whether it is ultimately persuaded by Justice Souter's reasoning in *Spencer*. After a review of the pertinent case law, this court concludes that it will adhere to Justice Souter's reasoning in *Spencer*. In doing so, this court aligns itself with the circuit and district courts that have concluded *Heck* only hints at an answer to the current issue before this court in dicta and therefore, does not constitute directly applicable precedent.[13] This is because the prisoner in *Heck* had the

---

[13]Chief Justice John Marshall provided the following definition of dictum:

> It is a maxim not to be disregarded, that general
> expressions, in every opinion, are to be taken in connection
> with the case in which those expressions are used. If they go
> beyond the case, they may be respected, but ought not to
> control the judgment in a subsequent suit when the very

(continued...)

remedy of habeas available to him. Moreover, *Heck* dealt specifically with the intersection between § 1983 and § 2254. Footnote ten goes beyond this realm and addresses situations where the two statutes technically do not intersect due to the unavailability of a remedy under § 2254. Thus, because habeas unavailability was not before the Court in *Heck*, footnote ten was not necessary to the Court's decision, and consequently is not binding. *See Smith v. Robbins*, 528 U.S. 259, 273 (2000) (disregarding language that was not necessary to the decision reached in a prior case), *Sandin v. Conner*, 515 U.S. 472, 483 n.5 (1995) (same); *United States v. Ross*, 456 U.S. 798, 824 (1982) (same). Furthermore, footnote ten in *Heck* suggested that the Court could not hypothecate a "real-life example," which this case clearly provides. 512 U.S. at 489 n.10. Accordingly, it becomes clear to this court, that *Heck* did not even foresee, much less address, the dilemma that is presented in the case at bar. *Spencer*, on the other hand, actually dealt with a prisoner who had completed his term, and although Justice Scalia wrote the majority opinion, five Justices disagreed with him with respect to his views on the applicability of the favorable

---

(...continued)

> point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.

*Cohens v. Virginia*, 19 U.S. (56 Wheat.) 264, 399-400 (1821). Similarly, Judge Posner has defined dictum as "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it." *Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986).

termination requirement to individuals without access to a remedy under habeas. *See* 523 U.S. at 18-22 (Souter, J., concurring); *id.* at 21-22 (Ginsburg, J., concurring); *id.* at 22 (Stevens, J., dissenting). Although this perspective may have originally been a minority position based on the dicta in *Heck*, by the time *Spencer* was decided, Justice Souter's position had become the majority position.[14] Regardless of the legal effect of this "unorthodox majority," as at least one court has noted, "there is no binding authority to the contrary . . . ." *Zupan*, 5 F. Supp. 2d at 798. Likewise, this court determines that the issue before it is an open one and that it is not bound by the constraints of *Heck* in arriving at its conclusion. The conclusion that neither *Heck* nor *Spencer* definitively decides the issue is bolstered by a footnote in the recent Supreme Court opinion of *Muhammad v. Close*, 540 U.S. 749 (2004). In *Close*, footnote two states: "Members of the Court have expressed the view that unavailability of habeas for other reasons may also dispense with the *Heck* requirement. This case is no occasion to settle the issue." *Close*, 540 U.S. at 752 n.2. This footnote implies that the issue has not been definitively decided, either in *Heck* or in *Spencer*.

Although this court has concluded that neither case is controlling, in the opinion of this court, Justice Souter's concurrences in *Heck* and *Spencer* reflect the more credible approach based on general fairness and statutory construction principles. "It is unfair to require a person who is legally precluded from challenging his or her conviction or sentence on habeas grounds to demonstrate that the conviction or sentence had been

---

[14]While the Supreme Court expressly disapproves of the practice of piece-mealing together statements from separate opinions to determine whether a case has been overruled, *see Agostini v. Felton*, 521 U.S. 203, 217 (1997); *cf. State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997), we are not in violation of this tenet as here the court is relying on separate opinions, not to overrule precedent, but rather to guide this court's resolution of what it has determined to be an open question.

overturned or invalidated." *Zupan*, 5 F. Supp. 2d at 797.  A conclusion to the contrary would create a "patent anomaly," whereby prisoners who are still in custody are provided with a forum to redress constitutional wrongs, but those individuals who are no longer in custody or never were in custody have no forum in which to enforce their rights. *Spencer*, 523 U.S. at 20-21 (Souter, J., concurring).  Such a result, would create the appearance of rewarding those prisoners serving the longest terms of imprisonment, a result at which this court refuses to arrive.  Moreover, it is not appropriate, at least in the eyes of this court, to unnecessarily constrain the broad language promulgated by Congress in § 1983, when neither § 2254 nor any other statute operates  to intersect with it or acts as a limitation on its breadth.  Therefore, this court concludes that *Heck*'s favorable termination requirement is not applicable to a § 1983 plaintiff who is unable as a matter of law to bring a habeas petition to challenge a conviction or sentence.[15]  The court will now turn to a discussion

---

[15]This court does not believe its holding will encourage prisoners to delay their challenges to loss of good time credits until their release from incarceration.  As the Ninth Circuit has noted, "The possibility of release from incarceration is the strongest incentive for prisoners to act promptly to challenge such administrative action by habeas corpus after administrative remedies are exhausted." *Nonnette*, 316 F.3d at 878 n.7.  Further, the court's holding today is not without limitations.  For example, other courts have declined to hold that a failure to timely pursue habeas remedies takes a prisoner's § 1983 claim out of *Heck*'s purview. *See, e.g.*, *Cunningham v. Gates*, 312 F.3d 1148, 1154 n.3 (9th Cir. 2002).  Thus, the court's holding today potentially affects only a small number of prisoners—former prisoners challenging the loss of good time credits or revocation of parole whose claims, under *Spencer*, have been mooted by their release from incarceration, or those prisoners challenging their underlying convictions who were never "in custody," or served too short of time to physically file a petition for  habeas corpus while "in custody."  This latter group of potentially affected prisoners is further reduced by the fact that, unlike challenges to parole revocation or loss of good time credits, challenges to an underlying conviction are not mooted upon the prisoner's release from incarceration, and a habeas action may still be maintained provided that it was filed at the time the individual

(continued...)

of these issues with respect to Dible's claims.

## D. Application

Dible seeks damages under § 1983 for deprivation of his due process rights based on allegations that the disciplinary notice he received was "too vague" and ultimately prevented him from preparing a meaningful defense to the charge.[16] The linchpin of his damages claim is the revocation of his good time credits. Dible first argues his claims should not be dismissed because he is outside the realm of *Heck*, since he is not asking for reinstatement of his good time credits. Dible contends he is not challenging the final outcome of his disciplinary proceeding; he is merely challenging the procedures utilized in that proceeding. Unfortunately for Dible, this argument is clearly erroneous in light of the Supreme Court's opinion in *Edwards*. *See* 520 U.S. at 645-49. In *Edwards*, the Court issued a unanimous opinion rejecting the very distinction Dible attempts to make. *Id.* There, as mentioned previously, the inmate, like Dible, specifically did not seek restoration of his revoked good time credits, in an attempt to avoid application of the

---

[15](...continued)
was "in custody." *See Spencer*, 523 U.S. at 7-8 (noting collateral consequences have been presumed in cases challenging an underlying conviction) (citing *Sibron v. New York*, 392 U.S. 40, 55-56 (1968)).

[16]Where a prison disciplinary hearing may result in the loss of good time credits, procedural due process requires that an inmate receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).

favorable termination requirement. *Id.* at 645, 648. Unpersuaded, the Court explained that even though a prisoner does not request restoration of his good time credits, when a ruling in his favor on his procedural claims would necessarily vitiate the administrative decision revoking his good time credits, a claim under § 1983 is not viable. *See id.* at 644-46. Dible's claim is no different—he seeks damages for alleged due process violations—and a ruling in his favor would imply the invalidity of his punishment because deprivation of a liberty interest without due process is unconstitutional.

The Eighth Circuit also recently confronted this issue in *Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002). There, the prisoner sought damages for two prison disciplinary rulings that resulted in the revocation of forty-five days of the inmate's good time credits. *Portley-El*, 288 F.3d at 1064. In his complaint, the inmate alleged due process and equal protection violations. *Id.* He originally sought restoration of the credits, in addition to monetary damages. *Id.* at 1064-65. After the district court dismissed his complaint, the inmate only appealed the district court's dismissal of his claim for monetary damages. *Id.* at 1066. Portley-El argued that his claim was not *Heck*-barred because it was a claim for which habeas relief was not available as he was not challenging the fact or duration of his sentence. *Id.* at 1066-67. In rejecting this contention, the Eighth Circuit stated:

> *Edwards* confirms that Portley El's due process damage claim would be *Heck*-barred even if he had never requested restoration of his good time credits. Under *Heck*, "we disregard the form of relief sought and instead look to the essence of the plaintiff's claims." *Sheldon v. Hundley*, 83 F.3d [231,] 234 [(8th Cir. 1996)]. Because Portley-El seeks damages for the *imposition* of discipline that included the loss of good time credits, his damage claim challenges "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" and is *Heck*-barred. 512 U.S. at 486, 114 S. Ct. 2363.

*Id.* at 1067. Additionally, the Eighth Circuit noted that Portley-El's claims, regardless of the type of relief he sought, fell outside "the limited *Heck* exception for § 1983 claims 'challenging disciplinary proceedings for using wrong procedure.'" *Id.* at n.2 (quoting *Ellis v. Bolin*, 208 F.3d 1068 (8th Cir. 2000)). Thus, regardless of the type of relief sought, because a ruling in Dible's favor would necessarily vitiate his underlying conviction, it is clear that his § 1983 action is foreclosed by both Supreme Court and Eighth Circuit precedent, unless there is some other reason to take Dible's claims outside the ambit of *Heck*'s favorable termination requirement.[17]  Based on *Spencer*, this court

---

[17]Dible attempts to rely upon the Eighth Circuit's opinion in *Armento-Bey v. Harper*, 68 F.3d 215, 216 (8th Cir. 1995), a case in which the Eighth Circuit reversed (without any substantial discussion) the district court's dismissal of a § 1983 claim that was premised upon the prisoner's allegations that he was prevented from presenting certain evidence in his defense during his prison disciplinary hearing. Factually, this court finds it extremely difficult to reconcile *Armento-Bey* with *Heck*, because as Judge Bowman pointed out in his cogent dissent, ordinarily, when a prisoner is "denied procedural due process during his disciplinary hearing, then it necessarily follows that the disciplinary decision ... [is] unconstitutional and cannot stand." However, *Armento-Bey* was decided prior to *Edwards*, which may explain the seemingly incongruous result reached by the Eighth Circuit in *Armento-Bey*. Moreover, it is possible that the majority's holding in *Armento-Bey* was predicated upon the premise that the exclusion of the disputed evidence was not necessarily improper and therefore did not call into question the validity of the disciplinary proceeding. This is because the right to call witnesses and present documentary evidence at a prison disciplinary hearing is not infinite and can be limited when inconsistent with institutional safety and correctional goals. *See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell*, 418 U.S. at 563-67 (1974)). This construction reconciles *Armento-Bey*, at least to some degree, with the Supreme Court's decisions in *Heck* and *Edwards*. In the matter before this court, however, Dible claims he was prevented from preparing and presenting a meaningful defense due to inadequacies in the notice he received. These allegations, if true, would result in a violation of a constitutional magnitude and consequently would necessarily imply the invalidity of Dible's disciplinary proceeding.

concludes there is.

Unlike the plaintiffs in *Preiser*, *Heck* and *Edwards*, Dible's claims do not lie at the intersection of § 2254 and § 1983. Dible is precluded from bringing a habeas corpus petition challenging the revocation of his good time credits because he cannot satisfy § 2254's "in-custody" requirement as he has been released from incarceration. Moreover, Dible has already served the additional time resulting from revocation of good time credits. Were Dible to seek a writ of habeas corpus, his petition would present no case or controversy because establishing the invalidity of his disciplinary hearing could have no potential effect on the days of additional incarceration he served. *See Spencer*, 523 U.S. at 12-18. Although *Spencer* addressed Article III's case or controversy requirement with respect to a habeas claim in the context of parole revocation, this court sees no relevant distinction between the collateral consequences attending parole revocation and those attending Dible's deprivation of good time credits. This is especially true in light of the Court's adamant refusal to extend the presumption of collateral consequences beyond challenges to an underlying conviction and its summary rejection in *Spencer* of the asserted "injuries-in-fact," many of which would also be arguable with respect to a loss of good time credits. *See id.* Consequently, this court is satisfied that Dible's petition for habeas corpus would have to be dismissed on mootness grounds under the logic set forth in *Spencer*. Accordingly, the only federal remedy available to Dible at this point is an action under § 1983. In the absence of binding Supreme Court precedent, and in light of the guidance proffered by the concurrences in *Heck* and *Spencer*, this court concludes Dible may proceed with his § 1983 action without first satisfying the favorable termination requirement of *Heck*. Consequently, the defendants' motion to dismiss is **denied**.

### III. CONCLUSION

The decision issued by this court today ensures that prisoners seeking redress from constitutional violations will have a federal forum available to them. A contrary conclusion would have the untoward consequence of creating a right without a remedy, which is in essence, no right at all. Consequently, the defendants' motion to dismiss is **denied**. The parties shall have until **Wednesday, March 1, 2006,** in which to file a scheduling order.

**IT IS SO ORDERED.**

**DATED** this 24th day of January, 2006.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA