# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

WILLIAM S. DIBLE,

        Plaintiff,

vs.

STEVE SCHOLL and
GARY O. MAYNARD,

        Defendants.

No. C05-4089-PAZ

**ORDER ON MOTIONS FOR
SUMMARY JUDGMENT**

---

## I.  INTRODUCTION

The matters before the court are the defendants' motion for summary judgment, filed September 29, 2006 (Doc. No. 18), and the plaintiff's cross-motion for summary judgment, filed November 16, 2006[1] (Doc. No. 22).  The plaintiff resisted the defendants' motion for summary judgment on November 16, 2006 (Doc. No. 23).  The defendants resisted the plaintiff's cross-motion for summary judgment on November 22, 2006 (Doc. No. 24).

By order dated March 7, 2006, upon the consent of the parties in accordance with 28 U.S.C. § 636(c), this matter was reassigned to the undersigned United States Magistrate Judge for final disposition.  (*See* Doc. No. 15)

The plaintiff, William S. Dible, is a former resident of the Residential Treatment Facility ("RTF") in Sioux City, Iowa.  He filed this action against the defendants under 42 U.S.C. § 1983 to redress the alleged deprivation of his constitutional rights.  Dible

---

[1]The plaintiff's cross-motion for summary judgment is untimely.  The plaintiff missed the dispositive motion deadline by a month-and-a-half and never sought to extend the deadline.  Although the court could strike the plaintiff's cross-motion for summary judgment as untimely pursuant to Local Rule 1.1(f), the court deems it appropriate to address the merits of the motion concurrently with the defendants' motion.

contends the defendants violated his constitutional right to due process, and failed to follow the rules of the Iowa Department of Corrections ("Iowa DOC") when they issued a disciplinary notice to Dible that "failed to contain adequate information specifically the name of the alleged victim, a general time and general location, which precluded [Dible] from defending himself in a meaningful manner." (Doc. No. 2, ¶ 5) Dible seeks monetary damages for the alleged violation of his constitutional rights.

The defendants deny they committed any constitutional violation. They maintain there are no disputed facts, and argue it is appropriate for the court to grant them judgment as a matter of law. Specifically, the defendants argue no violation of Dible's constitutional right to due process occurred, and in any event, they are entitled to qualified immunity.

In his cross-motion for summary judgment, Dible contends the undisputed material facts establish that the disciplinary notice he received was insufficient. He further argues the defendants are not entitled to qualified immunity.

Finding the motion for summary judgment and cross-motion for summary judgment to be fully submitted and ready for decision, the court turns now to consideration of the motions.

## II. STANDARDS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment and provides that either party to a lawsuit may move for summary judgment without the need for supporting affidavits. *See* Fed. R. Civ. P. 56(a), (b). Rule 56 further states that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). A court considering a motion for summary judgment "must view all of the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts." *Webster Indus., Inc. v. Northwood Doors, Inc.*, 320 F. Supp. 2d 821, 828 (N.D. Iowa 2004) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); and *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996)).

The party seeking summary judgment must "'inform[ ] the district court of the basis for [the] motion and identify[ ] those portions of the record which show lack of a genuine issue.'" *Webster Indus.*, 320 F. Supp. 2d at 829 (quoting *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992), in turn citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986)). A genuine issue of material fact is one with a real basis in the record. *Id.* (citing *Hartnagel*, 953 F.2d at 394, in turn citing *Matsushita*, 475 U.S. at 586-87, 106 S. Ct. at 1356). Once the moving party meets its initial burden under Rule 56 of showing there is no genuine issue of material fact, the nonmoving party, "by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Webster Indus*, 320 F. Supp. 2d at 829 (citing, *inter alia*, *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; and *Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997)).

Addressing the quantum of proof necessary to successfully oppose a motion for summary judgment, the Supreme Court has explained that the nonmoving party must produce sufficient evidence to permit "a reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Furthermore, the Supreme Court has held the trial court must dispose of claims unsupported by fact and determine whether a genuine issue exists

for trial, rather than weighing the evidence and determining the truth of the matter. *See Anderson*, 477 U.S. at 249, 106 S. Ct. at 2510; *Celotex*, 477 U.S. at 323-24, 106 S. Ct. at 2552-53; *Matsushita*, 475 U.S. at 586-87, 106 S. Ct. at 1356.

The Eighth Circuit recognizes that "summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun-Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir. 1990) (citing Fed. R. Civ. P. 56(c)). The Eighth Circuit, however, also follows the principle that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting *Celotex*, 477 U.S. at 327, 106 S. Ct. at 2555); *see also Hartnagel*, 953 F.2d at 396.

Thus, the trial court must assess whether a nonmovant's response would be sufficient to carry the burden of proof at trial. *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552). If the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552; *Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990). However, if the court can conclude that a reasonable jury could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir. 1991); *Woodsmith*, 904 F.2d at 1247.

## III.  MATERIAL FACTS

Dible was in the custody of the Iowa DOC from February 1994, to August 31, 2005. During that period, the Iowa DOC placed Dible in several correctional institutions, transferring him several times. On April 25, 2003, the Iowa DOC granted Dible work

release status and placed him at the RTF. While at the RTF, Dible had extensive privileges, which included using his automobile, working five days per week, remaining outside the RTF for four hours each day, taking furlough for forty-eight hours each week, and traveling to and from rehabilitation sessions.

At the time Dible was at the RTF, the defendant Steve Scholl was Division Manager of the RTF. The defendant Gary Maynard is Director of the Iowa DOC. On July 22, 2003, Scholl issued a disciplinary notice to Dible charging him with two violations of prison disciplinary rules. The notice was on a form that has six sections. Section I has a space for "Who, What, When, Where & How." It directs the person completing the form, in capital letters, "DO NOT INCLUDE CONFIDENTIAL INFORMATION" in filling out the form. Scholl stated the following in Section I:

> Based on confidential information received by facility staff
> from two sources, Dible is charged with the cited violations.
> Dible has threatened and choked a citizen of the State of Iowa.

Although Scholl described "what" Dible was alleged to have done, he did not include any information about "who" the victim was, who witnessed the violations, "when" or "where" the violations occurred, or "how" Dible was alleged to have committed the violations.

In Section II of the notice, Dible acknowledged receipt of the notice at 10:15 a.m. on July 23, 2003.

Section III of the notice sets forth the rights of alleged offenders, as follows:

> You are entitled to: (a) a minimum of 24 hours from receipt of
> this notice to prepare for the disciplinary hearing, (b) present
> evidence and request available witnesses/statement[s] related
> to the allegation(s)[], (c) assistance from another person if
> necessary (staff only), [and] (d) remain silent.

> You are advised that: (a) criminal prosecution is possible for
> a law violation, (b) you have the right to remain silent,
> however, your silence may be used against you in the

disciplinary hearing, and (c) anything you say may be used against you in criminal proceedings.

The finding of guilt may result in your work release/OWI being revoked.

Scholl made a handwritten notation in Section III of the notice indicating Dible "[w]ants enough time to gather evidence and assistance from staff to gather trial evidence."

Section IV of the notice contains space to set out additional information from the staff's investigation, and to note whether the alleged offender admits guilt or claims innocence. Here, Scholl noted Dible proclaimed his innocence. He also wrote the following:

You want witness, wants a lawyer Robert Sikma, witness Rita Baker, wants Guy Frank and related statements written regarding Rita Baker and Travis Baker. Wants all confidential written statements with names of confidential informants blocked. Needs more specific information/Travis Baker refused written comment.

A hearing was conducted by two staff members of the RTF on July 28, 2003. Section V of the notice contains the hearing decision and sets out the sanctions imposed. Dible was found guilty of violating Major Rules #3 (threats or intimidation) and #25 (assault), "based on confidential information we received from the jail and the confidential information received by facility staff from two sources." The staff members further noted the following:

Res. Dible requested again that his attorney be present, that he have assistance from staff in obtaining information and an affidavit from Travis Baker. He also stated that Rita Baker has told his attorney that [he] never assaulted her and she is not the confidential informant.

Based on their findings, the staff members imposed a sanction of "reclassification," and recommended that Dible lose good time credit. As a result, Dible lost his work release privileges and was returned to the Anamosa State Penitentiary in Anamosa, Iowa.

6

Additionally, on August 15, 2003, an administrative law judge determined that Dible should lose sixty days of earned good time.

In Section VI of the notice, Dible was informed of his right to appeal the decision within twenty-four hours of the hearing. Dible exhausted his administrative remedies, and filed an application for postconviction relief with respect to the disciplinary proceeding. The State filed a motion for summary judgment. After reviewing the confidential information *in camera*, the district court granted the State's motion for summary judgment. Dible filed a petition for writ of certiorari. On December 22, 2004, the Iowa Court of Appeals annulled the writ, finding "the notice was sufficient under due process principles." *Dible v. Iowa District Court for Jones County*, 695 N.W.2d 335 (Table), 2004 WL 2952721 (Iowa Ct. App. 2004).

Iowa DOC Policy IN-V-36 regulates the use of confidential information during disciplinary proceedings at a residential treatment/work release program. Under the policy, staff is allowed to consider evidence or testimony reviewed outside the presence of the alleged offender. There are three standards that govern the implementation of the confidential information policy. The first standard sets forth when confidential information can be utilized. The second standard requires staff to prepare a summary of the confidential information. The third standard provides as follows:

> Where confidential information is excluded from the description (Section I) of the Disciplinary Report [form] (WR-11), said notice shall still include:
>
> A.   A general description of the incident and the rule(s) violated.
> B.   The general time and place of the incident.
> C.   The individual(s) involved in the incident, if not confidential. (Where information is excluded from the notice consistent with the comments above, said omission shall be documented in Section I of the disciplinary report).

## IV. ANALYSIS

### A. Overview of Civil Rights Claims Under 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685, 98 S. Ct. 2018, 2033, 56 L. Ed. 2d 611 (1978). However, section 1983 provides no substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811, 127 L. Ed. 2d 114 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S. Ct. 1905, 1916, 60 L. Ed. 2d 508 (1979). "One cannot go into court and claim a 'violation of § 1983' — for § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617, 99 S. Ct. at 1916. Rather, section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see Albright*, 510 U.S. at 271, 114 S. Ct. at 811 (section 1983 "merely provides a method for vindicating federal rights elsewhere conferred"); *Graham*, 490 U.S. at 393-94, 109 S. Ct. at 1870 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S. Ct. 2502, 2504, 65 L. Ed. 2d 555 (1980) ("Constitution and laws" means section 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution).

To state a claim under 42 U.S.C. § 1983, Dible must establish two essential elements: (1) the violation of a right secured by the Constitution or laws of the United

States, and (2) the alleged deprivation of that right that was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55, 101 L. Ed. 2d 40 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330, 106 S. Ct. 662, 664, 88 L. Ed. 2d 662 (1986).

## B. Dible's Due Process Claim

Dible claims the disciplinary notice deprived him of due process because it did not include even general information regarding the date or location of the alleged assault. Dible contends he could not prepare a meaningful defense without this information. In response, the defendants acknowledge the information contained in the disciplinary report was sparse, but they contend the notice provided to Dible comported with due process requirements because it adequately allowed him to marshal the facts and prepare a defense.

The constitutional rights of inmates are legitimately curtailed as a result of their convictions for criminal offenses. *See Hewitt v. Helms*, 459 U.S. 460, 467, 103 S. Ct. 864, 869, 74 L. Ed. 2d 675 (1983); *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S. Ct. 2963, 2974, 41 L. Ed. 2d 935 (1974). Despite such curtailment, inmates are entitled to several protective procedures at disciplinary hearings. *See Wolff*, 418 U.S. at 564-66, 94 S. Ct. at 2978-80. Specifically, "[w]here a disciplinary hearing may result in the loss of good time credits, [. . .] the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with the institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454, 105 S. Ct. 2768, 2773, 86 L. Ed. 2d 356 (1985) (citing *Wolff*, 418 U.S. at 563-67, 94 S. Ct. at 2978-80); *see also Hrbek v. Nix*, 12 F.3d 777, 780 (8th Cir. 1993) (discussing due

process requirements for prison discipline).  Further, the disciplinary decision must be supported by some evidence in the record.  *Hill*, 472 U.S. at 455, 105 S. Ct. at 2774; *see also Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997.

Dible concedes he received an opportunity to present evidence in his defense, the factfinder provided him with a written statement of the reasons for the action, and there was some evidence in the record that supported the decision.  Nonetheless, Dible asserts he did not receive sufficient notice because he did not know when or where the alleged violations occurred.

The question here is whether the notice given to Dible was sufficient to satisfy the requirements of due process in an inmate disciplinary proceeding.  The U.S. Supreme Court has held that the purpose of such a notice is "to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are."  *Wolff*, 418 U.S. at 564, 94 S. Ct. at 2978.  Here, neither of these purposes was satisfied.  All Dible was told was that he had "threatened and choked a citizen of the State of Iowa."  He was not told who he had threatened, or where, or when, or what the threat was.  He was not told who he had choked, or when or where the alleged choking incident had occurred.  The "notice" was notice of nothing other than the bare fact that Dible was being charged with violating two prison disciplinary rules.  While an inmate has substantially curtailed rights as a result of his incarceration, he certainly has the right, when charged with a rules violation, to know at least some minimal details of what he is being charged with.  To advise him that he is being charged with choking someone without telling him who he allegedly choked, the month or even the year in which the incident allegedly occurred, or the state or city where the incident allegedly took place, is not "notice" at all.

Scholl argues Dible could have deduced that the violations had occurred between April 25, 2003, the date Dible arrived at the Sioux City RTF, and July 22, 2003, the date the disciplinary notice was issued -- a period of less than three months.  Dible disagrees,

arguing the alleged violations could have occurred before he arrived at the RTF because no statute of limitations exists with respect to disciplinary notices issued to prison inmates. Thus, he asserts, the alleged violations could have occurred earlier, while he was at another Iowa correctional facility. The court agrees with Dible's analysis on this point.

Certainly, the defendants were not required to compromise witnesses or to jeopardize security in the institution. This means, for example, they did not have to provide detailed information to Dible that might have revealed how they learned of the alleged violations. It does not mean, however, that they can hold a star chamber, where they keep the accused completely in the dark concerning the allegations against him.

Dible attempted to defend himself at the hearing by presenting evidence that he did not choke someone named Rita Baker. If she was the person Dible allegedly threatened and choked, then he had the opportunity to present evidence concerning those allegations. *See Frietas v. Auger*, 837 F.2d 806, 809 (8th Cir. 1988) ("The adequacy of the notice hinges on whether it allows the inmate to 'marshal the facts' and prepare a defense.") (citing *Wolff*, 418 U.S. at 564, 94 S. Ct. at 2879-79). However, from what Dible knew, and from what the court can divine from this record, the allegations against Dible might have concerned some other person, at some other place and time, which Dible had no opportunity to address. The notice was patently insufficient to provide notice to Dible of the facts upon which the allegations against him were based.

The defendants' argument that Dible somehow should have divined enough from the notice to defend himself is disingenuous. The notice contained nothing more than a bare allegation that Dible had committed rules violations. This is not "notice" of anything. *See Rinehart v. Brewer*, 483 F. Supp. 169, 170 (S.D. Iowa 1980) (notice containing only the charge without specific facts found to be insufficient under *Wolff*). The court finds the notice was constitutionally insufficient.

To recover on his claim, Dible must show that he was denied a liberty interest under the Fourteenth Amendment as a result of the deficiencies in the notice. Dible contends that as a result of the disciplinary decision, he lost the privileges associated with his work release status. However, Dible does not have a due process claim with respect to the denial of work release because Iowa's parole/work release statute, Iowa Code section 906.4, does not create a liberty interest. See *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669-70 (8th Cir. 1996).

Dible also contends that, as a result of the disciplinary decision, he lost sixty days of good time credit. The Eighth Circuit Court of Appeals has held "good time credits alone are not liberty interests." *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996) (citing *Wolff*, 418 U.S. at 557, 94 S. Ct. at 2975). "To be so considered, the state must have created a mandatory scheme which necessarily affects the duration of a prisoner's sentence." *Moorman*, 83 F.3d at 973. The *Moorman* court, in *dicta*, strongly suggested that, unlike the Nebraska statutory system considered by the Supreme Court in *Wolff*, the Iowa statutory system is not such a mandatory scheme. *Id.* ("[G]iven its highly discretionary nature, it is unclear that Iowa's statutory scheme creates a liberty interest in good time.") Thus, there is a question concerning whether Dible has a viable due process claim in this case. However, the Iowa Supreme court, in *Sanford v. Manternach*, 601 N.W.2d 360, 364-67 (Iowa 1999), disagreed with the analysis and conclusions in *Moorman*, and held there is a liberty interest in good time under the Iowa statutory scheme. *See also Gonzales-Perez v. Harper*, 341 F.3d 633, 637 (8th Cir. 2001) (recognizing the disagreement between *Sanford* and *Moorman*, but not addressing the issue).

The *Sanford* court specifically found Iowa's statutory scheme to be the same as the Nebraska statutory scheme considered in *Wolff*, holding as follows:

> [W]e conclude that the nature of an inmate's interest in sentence reduction for good-conduct time is the same here as

it was under the Nebraska statute considered in *Wolff*. Inmates' interests are of "real substance" under both statutory schemes because the forfeiture of good-time credits affects the duration of the inmates' sentences. *See Whitlock v. Johnson*, 982 F. Supp. 615, 617-18 (N.D. Ill. 1997) (holding that inmate had a constitutionally protected interest in the loss of earned good-time credits, stating that *Sandin [v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)] "essentially reconfirmed that a liberty interest is implicated . . . if 'the State's action will inevitably affect the duration of his sentence'"); *Burnell v. Coughlin*, 975 F. Supp. 473, 475 (W.D.N.Y. 1997) (finding liberty interest in loss of good-time credits, citing *Sandin* for the proposition that "a restraint which 'inevitably affect[s] the duration of [an inmate's] sentence' creates a liberty interest"); *Haff v. Cooke*, 923 F. Supp. 1104, 1119 (E.D. Wis. 1996) (holding that inmate's loss of good time required due process, without any examination of terms of state statute); *Nelson v. McBride*, 912 F. Supp. 403, 406 (N.D. Ind. 1996) (holding, without an examination of Indiana statute, that good-time credits were a liberty interest, citing *Sandin* for the principle that a "liberty interest is present where action of the state will inevitably affect the duration of the inmate's sentence"; *Orozco[ v. Day]*, 934 P.2d [1009, 1016 (Mont. 1997)] (holding that a liberty interest was created where "the good time provisions . . . directly affect the duration of inmates' confinement"). Consequently, the United States Supreme Court's opinion in *Wolff* is dispositive of the issue before us. Accordingly, we hold that [the appellant] has a liberty interest in his good-conduct time that is protected by the Due Process Clause of the Fourteenth Amendment.

*Sanford*, 601 N.W.2d at 367-68.

The court is persuaded by the analysis of the Iowa Supreme Court, and holds Dible had a liberty interest in his good conduct time protected by the Due Process Clause of the Fourteenth Amendment. *See Sanford*, 601 N.W.2d at 367-68.

An additional question is whether Dible can even raise these claims in a section 1983 action. In *Moorman*, the State apparently argued a claim for the loss of good time

credit is not cognizable under section 1983 pursuant to *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). *See Moorman*, 83 F.3d at 973 n.4 (citing *Heck*, 512 U.S. at 481-82, 114 S. Ct. at 2370-72). In *Heck*. the Supreme Court held that for an inmate to recover damages under section 1983 for unconstitutional conduct that would render a conviction or sentence invalid, the plaintiff first must prove "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 USC § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck*, 512 U.S. at 486-87, 114 S. Ct. at 2372.

The defendants in the present action asserted a similar argument in a motion to dismiss. After an exhaustive analysis of *Heck* and its progeny, Chief Judge Mark W. Bennett rejected the defendants' argument, finding that because Dible has discharged his sentence and been released from custody, he is "precluded from bringing a habeas corpus petition challenging the revocation of his good time credits because he cannot satisfy § 2254's 'in custody' requirement as he has been released from incarceration." *Dible v. Scholl*, 410 F. Supp. 2d 807, 827 (N.D. Iowa. 2006). As a result, Judge Bennett held Dible could proceed with this action under section 1983 "without first satisfying the favorable termination requirement of *Heck*," ensuring "that prisoners seeking redress from constitutional violations will have a federal forum available to them. A contrary conclusion would have the untoward consequence of creating a right without a remedy, which is in essence, no right at all." *Dible*, 410 F. Supp. 2d at 828.

## C. *Qualified Immunity*

Qualified immunity protects government officials from civil trials and liability when their conduct in performing discretionary functions violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). Qualified immunity is available "to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004).

A two-part inquiry is used to determine if qualified immunity protects a government official. A court first must ask whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the defendants' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). If a constitutional right has not been violated, it is unnecessary to inquire further regarding qualified immunity. *Id*. If a violation could be established on the facts alleged, the second inquiry is whether the constitutional right was clearly established at the time the violation occurred. *Id*. "Immunity will be appropriate if the § 1983 plaintiff does not allege violation of a clearly established constitutional right in the first instance." *Latimore v. Widseth*, 7 F.3d 709, 712 (8th Cir. 1993) (citing *Harlow*, 457 U.S. at 818, 102 S. Ct. at 2738).

Here, the court has found that the defendants violated Dible's right to receive adequate notice of the allegations against him. Even though the Iowa Court of Appeals found the notice to be constitutionally sufficient, this court nevertheless finds the notice requirements as set out in *Wolff*, and in fact described in Section I of the notice form itself, demonstrate that the notice given here was deficient. Furthermore, the constitutional right to due process which was violated by the inadequate disciplinary notice was clearly

established at the time of the violation. On these facts, the court finds the defendants are not entitled to qualified immunity.

As a result, the defendants' motion for summary judgment is **denied**. Dible's cross motion for summary judgment is **granted**. This matter will proceed to trial solely on the issue of damages. Notably, the measure of damages is not the actual loss of good time suffered by Dible; rather, he is entitled to damages for the defendants' use of the wrong procedures, not for reaching the wrong result. *See Heck*, 512 U.S. at 482-83, 114 S. Ct. at 2370 (citing *Wolff*, 418 U.S. at 554, 94 S. Ct. at 2974).

## V. CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is **denied**.

**IT IS SO ORDERED.**

**DATED** this 20th day of December, 2006.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT