## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

| | |
|---|---|
| WILLIAM S. DIBLE,<br><br>        Plaintiff,<br><br>vs.<br><br>STEVE SCHOLL and<br>GARY O. MAYNARD,<br><br>        Defendants. | No. C05-4089-PAZ<br><br>**MEMORANDUM OPINION<br>AND ORDER OF DISMISSAL** |

_____

This matter is before the court on the defendants' motion (Doc. No. 46) asking the court to reconsider prior orders of the court, as explained below. Dible, acting *pro se* following the death of his attorney, has resisted the motion. (Doc. No. 48) The court reserved ruling on the motion until after the trial of the case on the issue of damages. Trial was held on January 9, 2008. The defendants filed a post-trial brief on February 15, 2008. (Doc. No. 54) The matter is now fully submitted, and the court turns to consideration of the defendants' motion.

In this case the plaintiff, William S. Dible, was in the custody of the Iowa Department of Corrections ("Iowa DOC") from February 1994, to August 31, 2005. During that period, the Iowa DOC placed Dible in several correctional institutions, transferring him several times. On April 25, 2003, the Iowa DOC granted Dible work release status and placed him at the Residential Treatment Facility ("RTF") in Sioux City, Iowa. At the time Dible was at the RTF, the defendant Steve Scholl was Division Manager of the RTF. The defendant Gary Maynard was Director of the Iowa DOC.

On July 22, 2003, Scholl issued a disciplinary notice to Dible charging him with two violations of prison disciplinary rules. The violation notice was based in large part on what Scholl termed "confidential information received by facility staff from two

sources." A hearing was scheduled, and Dible requested the assistance of an attorney at the hearing. He also asked to see the statements from the confidential sources, and he asked to call witnesses at the hearing. His requests were denied. At the hearing, Dible was found to have violated the two rules, and staff members imposed a sanction of "reclassification," and recommended that Dible lose good time credit. As a result, Dible lost his work release privileges and was returned to the Anamosa State Penitentiary in Anamosa, Iowa. Additionally, on August 15, 2003, an administrative law judge determined that Dible should lose sixty days of earned good time. The parties agree the net result of these actions was that Dible spent an additional twenty-seven days in custody.

Dible exhausted his administrative remedies, and filed an application for post-conviction relief with respect to the disciplinary proceeding. Dible argued the disciplinary notice violated his right to due process because it failed to inform him of the facts underlying his alleged offenses sufficiently for him to defend himself against the allegations. The State filed a motion for summary judgment which was granted. Dible filed a petition for writ of certiorari. On December 22, 2004, the Iowa Court of Appeals annulled the writ, finding "the notice was sufficient under due process principles." *Dible v. Iowa District Court for Jones County*, 695 N.W.2d 335 (Table), 2004 WL 2952721 (Iowa Ct. App. 2004).

On July 13, 2005, eighteen days before Dible was released from custody by the Iowa DOC, he filed the present action against the defendants pursuant to 42 U.S.C. § 1983. He contends the defendants violated his constitutional right to due process and failed to follow the rules of the Iowa DOC when they issued a disciplinary notice to him that "failed to contain adequate information specifically the name of the alleged victim, a general time and general location, which precluded [Dible] from defending himself in a meaningful manner." On July 31, 2005, before the deadline for the defendants to move or plead in response to Dible's Complaint, Dible was released from custody.

The defendants responded to the Complaint by filing a motion to dismiss the case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim for which relief may be granted. The defendants argued this case is precluded by *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), in which the Supreme Court held a prisoner cannot maintain an action for damages under 42 U.S.C. § 1983 if the action necessarily would imply the invalidity of his conviction or sentence, until his conviction or sentence has been either reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. The defendants cited subsequent cases by both the Supreme Court and the Eighth Circuit Court of Appeals interpreting *Heck* in various contexts, including *Armento-Bey v. Harper*, 68 F.3d 215 (8th Cir. 1995); *Sheldon v. Hundley*, 83 F.3d 231 (8th Cir. 1996); *Edwards v. Balisok*, 520 U.S. 641, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997); *Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002); and *Muhammad v. Close*, 540 U.S. 749, 124 S. Ct. 1303, 158 L. Ed. 2d 32 (2004).

Judge Mark W. Bennett denied the motion to dismiss. *Dible v. Scholl*, 410 F. Supp. 2d 807 (N.D. Iowa 2006). Judge Bennett conducted an exhaustive examination of *Heck* and its progeny. He explained that "[i]n order to ensure the protection of an individual right, more than mere enumeration of that right is required. Without also a means of redress, an individual right becomes illusory due to the inability to enforce that right." *Id.*, 410 F. Supp. 2d at 808. Judge Bennett characterized the defendants' position as one transforming Dible's rights into "nothing more than a mirage – appearing to exist at first glance, but transforming into an illusion upon careful inspection due to the lack of a federal forum in which to enforce them." *Id.*, 410 F. Supp. at 809. Thus, Judge Bennett concluded Dible could proceed with his case without first satisfying *Heck*'s favorable termination requirement, holding that "[a] contrary conclusion would have the

3

untoward consequence of creating a right without a remedy, which is in essence, no right at all." *Id.*, 410 F. Supp. 2d at 828.

The defendants later filed a motion for summary judgment, arguing no violation of Dible's constitutional right to due process occurred, and also asserting the defense of qualified immunity. Dible filed a cross-motion for summary judgment. Subsequently, upon the consent of the parties in accordance with 28 U.S.C. § 636(c), this matter was reassigned to the undersigned United States Magistrate Judge for final disposition. The undersigned denied the defendants' motion for summary judgment on all grounds, and granted Dible's motion for summary judgment on the merits, leaving for trial only the question of damages. The court held the defendants were not entitled to qualified immunity on Dible's claim, and they had, in fact, violated Dible's right to due process by issuing a constitutionally-defective disciplinary notice. The defendants filed an interlocutory appeal on the qualified immunity issue, and on November 8, 2007, the Eighth Circuit Court of Appeals affirmed this court's decision. *Dible v. Scholl*, 506 F.3d 1106 (8th Cir. 2007) ("*Dible II*").

On December 14, 2007, the defendants filed their motion for reconsideration (Doc. No. 46), asking the court to reconsider both Judge Bennett's order denying their motion to dismiss, and the undersigned's order denying their motion for summary judgment and granting Dible's motion for summary judgment. The defendants argue a December 15, 2007, decision of the Eighth Circuit Court of Appeals in *Entzi v. Redmann*, 485 F.3d 998 (8th Cir. 2007), mandates reversal of the court's prior orders. The defendants further argue there is no evidence that the defendant Gary O. Maynard had any involvement in the "alleged constitutional violation." (Notably, the constitutional violation is not merely "alleged"; this court has held that a constitutional violation did, in fact, occur.)

The facts of *Entzi* are these. Entzi was convicted in North Dakota of a crime involving a sex offense. He was sentenced to ten years' imprisonment, with five of those

4

years suspended, and a term of supervised probation that was conditioned upon his participation in a sex offender treatment program. Among other things, the program required participants to admit their guilt to the offense of conviction, and "work to lose their denial." *Entzi*, 485 F.3d at 1000. Entzi refused to attend the sex offender classes. He maintained his innocence to the charges, and argued that requiring him to admit his guilt would compel him to be a witness against himself in violation of the Fifth Amendment. He further argued that he had testified in his own behalf at trial, and an admission of guilt could subject him to prosecution for perjury. Because Entzi refused to attend the sex offender classes, he was denied certain performance-based sentence reductions, resulting in his term of imprisonment being extended by over a year. A few days before Entzi was scheduled to be released from prison, his probation officer filed a petition to revoke probation based on Entzi's failure to complete the sex offender treatment program. A state court dismissed the petition, finding that requiring Entzi to admit his guilt during treatment "'violates the 5th Amendment right to be free from self-incrimination' and also 'violates common sense.'" *Id.*, 485 F.3d at 1001.

Entzi then filed a section 1983 action against the probation officer and prison officials, asserting the defendants had violated his constitutional rights in three respects, only one of which is relevant to the present inquiry. Entzi argued the prison officials' suspension of his right to earn performance-based sentence-reduction credits due to his refusal to attend the sex offender classes was unconstitutional. He argued that in effect, the prison officials had punished him for asserting his right against self-incrimination under the Fifth Amendment. The defendants argued Entzi's claim was barred under the *Heck* favorable-termination rule. The district court granted judgment on the pleadings for the defendants. On appeal, Entzi argued that because he no longer was in custody, he could not seek a writ of habeas corpus on a claim challenging the length of his imprisonment, and therefore his section 1983 suit was not barred by *Heck*.

5

The Eighth Circuit Court of Appeals disagreed, affirming the district court's ruling and holding, in pertinent part, as follows:

> The opinion in *Heck* rejected the proposition urged by Entzi. The Court said that "the principle barring collateral attacks – a longstanding and deeply rooted feature of both the common law and our own jurisprudence – is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Heck*, 512 U.S. at 490 n.10, 114 S. Ct. 2364. Entzi relies on a later decision of the Supreme Court, *Spencer v. Kemna*, 523 U.S. 1, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998), in which a combination of five concurring and dissenting Justices agreed in *dicta* that "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." *Id.* at 21, 118 S. Ct. 978 (Souter, J., concurring); *id.* at 25, 118 S. Ct. 978 n.8 (Stevens, J., dissenting). Absent a decision of the Court that explicitly overrules what we understand to be the holding of *Heck*, however, we decline to depart from that rule. *Accord Figueroa v. Rivera*, 147 F.3d 374, 380 n.6 (9th Cir. 1998); *but cf. Shamaeizadeh v. Cunigann.3* (6th Cir. 1999); *Nannette v. Small*, 316 F.3d 872-876-77 (9th Cir. 2002).
>
> Applying *Heck*, we agree with the district court that the favorable-termination rule bars Entzi's suit. If Entzi's challenge to the State's decision on sentence-reduction credits were to succeed, it "would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487, 114 S. Ct. 2364. Therefore, the claim may be pursued only in an action for habeas corpus relief.

*Entzi*, 485 F.3d at 1003.

In considering the defendants' motion to dismiss in the present case, Judge Bennett specifically recognized that "a ruling in Dible's favor would necessarily vitiate his underlying conviction [on the disciplinary charge.]" *Dible*, 410 F. Supp. 2d at 827. Judge

6

Bennett further acknowledged that both Supreme Court and Eighth Circuit precedent would bar Dible's section 1983 action, "unless there is some other reason to take Dible's claims outside the ambit of *Heck*'s favorable termination requirement." *Id.* Judge Bennett distinguished Dible's claim based on *Spencer v. Kemna*, 523 U.S. 1, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998):

> Unlike the plaintiffs in *Preiser [v. Rodriguez*, 411 U.S. 475, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973)], *Heck* and *Edwards*, Dible's claims do not lie at the intersection of § 2254 and § 1983. Dible is precluded from bringing a habeas corpus petition challenging the revocation of his good time credits because he cannot satisfy § 2254's "in-custody" requirement as he has been released from incarceration. Moreover, Dible has already served the additional time resulting from revocation of good time credits. Were Dible to seek a writ of habeas corpus, his petition would present no case or controversy because establishing the invalidity of his disciplinary hearing could have no potential effect on the days of additional incarceration he served. *See Spencer*, 523 U.S. at 12-18, 118 S. Ct. 978. Although *Spencer* addressed Article III's case or controversy requirement with respect to a habeas claim in the context of parole revocation, this court sees no relevant distinction between the collateral consequences attending parole revocation and those attending Dible's deprivation of good time credits. This is especially true in light of the Court's adamant refusal to extend the presumption of collateral consequences beyond challenges to an underlying conviction and its summary rejection in *Spencer* of the asserted "injuries-in-fact," many of which would also be arguable with respect to a loss of good time credits. *See id.* Consequently, this court is satisfied that Dible's petition for habeas corpus would have to be dismissed on mootness grounds under the logic set forth in *Spencer*. Accordingly, the only federal remedy available to Dible at this point is an action under § 1983. In the absence of binding Supreme Court precedent, and in light of the guidance proffered by the concurrences in *Heck* and *Spencer*, this court concludes Dible may proceed with his

> § 1983 action without first satisfying the favorable termination requirement of *Heck*.
>
> The decision issued by this court today ensures that prisoners seeking redress from constitutional violations will have a federal forum available to them. A contrary conclusion would have the untoward consequence of creating a right without a remedy, which is in essence, no right at all.

*Dible*, 410 F. Supp. 2d at 827-28.

Although the undersigned concurs with Judge Bennett's reasoning, it appears to be at odds with the Eighth Circuit's refusal to rely on the fragmented opinions of five Justices in *Spencer*. It is significant that Judge Bennett's order denying the defendants' motion to dismiss was not immediately appealable as of right because it was not a "final decision" of the court. 28 U.S.C. § 1391; *see* 28 U.S.C. § 1292. In contrast, the undersigned's order denying the defendants' motion for summary judgment on qualified immunity grounds was appealable as of right under the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 524-25, 105 S. Ct. 2806, 2814, 86 L. Ed. 2d 411 (1985). In *Dible II*, the court noted, "Although we have some discretion to exercise pendent appellate jurisdiction over related rulings that are not themselves immediately, we have not been asked to do so." *Dible II*, 506 F.3d at 1109 (citations omitted). Thus, the court limited its review to the undersigned's decision to deny qualified immunity, and did not address the order denying the defendants' motion to dismiss. *Id*.

This court reluctantly finds it is compelled to follow *Entzi*, and that failure to do so would be error. Accordingly, the defendants' motion for reconsideration is **granted**. The denial of the defendants' motion to dismiss is **reversed**, and this case is **dismissed with prejudice** on the grounds that the suit is barred by *Heck*'s favorable-termination rule. The case also is **dismissed with prejudice** against Gary O. Maynard on the merits, on the further basis that Maynard had no involvement in issuance of the constitutionally-deficient violation notice to Dible.

The court's previous order granting summary judgment to Dible is **reversed**; however, the court declines to reverse its previous decision that the disciplinary notice was constitutionally deficient – a hollow victory for Dible.

**IT IS SO ORDERED.**

**DATED** this 7th day of March, 2008.

*[signature]*

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT